305 So.2d 81 (1974)
Thomas J. ZAYDON and Helen Zaydon, His Wife, Appellants,
v.
Ben D. WILDER, D/B/a Southland Associates Realtors, Appellee.
No. 74-352.
District Court of Appeal of Florida, Third District.
December 3, 1974.
Rehearing Denied January 14, 1975.
*82 Meyer, Weiss, Rose & Arkin and S. Harvey Ziegler, Miami Beach, for appellants.
Caidin, Rothenberg, Kogan & Kornblum, Miami, for appellee.
Before HENDRY, HAVERFIELD and NATHAN, JJ.
NATHAN, Judge.
This is an appeal by the defendants from a final judgment in favor of the plaintiff and an order denying a motion for new trial.
The plaintiff in the trial court, Ben D. Wilder, d/b/a Southland Associates Realtors, appellee herein, is a registered real estate broker; the defendants, Dr. Thomas J. Zaydon and Helen Zaydon, his wife, appellants herein, are the sole owners of certain real property located in Dade County, Florida. At all pertinent times, Mrs. Zaydon owned the property together with her husband, but she did not participate in the negotiations.
This case arose out of the plaintiff's claim for a brokerage fee. The material facts begin with a standard form letter from the plaintiff to Dr. Zaydon, inquiring as to whether the subject property was for sale and, if so, what price and terms were desired. The bottom portion of the letter contains a P.S. clause, stating, "no obligation, of course," and provides space for a reply, which Dr. Zaydon signed and returned, setting a minimum price per acre.
Upon receipt of the response from Dr. Zaydon, the plaintiff, by and through his salesman, one Hart, prepared a memorandum listing, advertised the property for sale in the Miami Herald, showed it to prospective purchasers and ultimately obtained two deposit receipts from George Primov and his sons.
The first deposit receipt was dated February 15, 1972. After discussing this contract with his attorney, Dr. Zaydon advised Hart that it was not acceptable, and that changes had to be made, including an increase in price. The Primovs agreed to all changes except a reservation of mineral rights. On March 7, 1972, Dr. Zaydon telephoned Hart and told him that he would convey the mineral rights and sell the property under certain conditions which he enumerated. Hart's secretary, his wife, recorded the telephone conversation in shorthand; her notes and the transcription thereof, were introduced into evidence at the trial.
On March 10, 1972, the Primovs executed and delivered to Dr. Zaydon's attorney, a new deposit receipt contract. Dr. Zaydon advised Hart that it seemed agreeable to him, but that he had to get the approval of an associate. After holding the contract for about two weeks, Dr. Zaydon secured an extension for approval until April 3, 1972, after which date, he advised the plaintiff that he had decided not to go through with the deal. The property had not been sold as of the date of trial. On April 4, 1972, the plaintiff sent a letter to Dr. Zaydon demanding commission as the plaintiff had procured a purchaser, ready, willing and able to purchase on the terms and for the price requested.
At the trial, held before the court sitting without a jury, the Primovs testified that they were ready, willing and able to go through with the deal. The court, then, finding the plaintiff entitled to his commission, *83 entered judgment for the plaintiff, against both defendants, and denied the defendants' subsequent motion for rehearing, whereupon the defendants appealed. The dispositive issue is whether the purchaser presented by the plaintiff was ready, willing and able to purchase on all of the terms and conditions agreed to by the defendants.
From careful review of the record on appeal and the briefs of counsel, it appears that one of Dr. Zaydon's terms for sale of the property was a 10 per cent deposit upon the execution of the deposit receipt contract. He specified this in the telephone call of March 7, 1972, as reflected in Mrs. Hart's transcribed notes of that conversation. However, the deposit receipt contract dated March 10, 1972, submitted to Dr. Zaydon and his attorney for approval, provided a deposit in an amount approximating only 3 per cent of the purchase price. This contract further provided that Dr. Zaydon would deliver an abstract to the purchasers within fifteen days; that the closing would take place within one hundred days from delivery of the abstract; and that if the sale were not consummated, Dr. Zaydon, the seller, would keep only one-half of the aforementioned deposit. Obviously, the deposit and the time of closing are material terms of this deposit receipt contract to which the sellers had not agreed. The controlling legal principle in this situation is that where the broker is employed to procure a purchaser who is ready, willing and able to buy, he will be entitled to his commission upon the execution of a binding contract of sale by the buyer which contains terms prescribed by or acceptable to the seller. McAllister Hotel v. Porte, Fla. 1957, 98 So.2d 781; Zide v. Arthur, Fla.App. 1963, 153 So.2d 747. The 3 per cent deposit was clearly not what Dr. Zaydon prescribed, and there is no indication in the record that he ever agreed to the figure of one hundred days to close.
Therefore, for the reasons stated and on the authorities cited, the judgment is hereby reversed.
Reversed.