SWANSON, J.
Appellant, Peter M. Tydir, appeals a final judgment entered in accordance with *1130 the jury’s verdict finding he breached an oral agreement with appellee, Mark R. Williams. We affirm without further discussion Tydir’s first point on appeal. However, because we agree with Tydir’s arguments made under Points II and III, that Williams’ claim was barred by the statute of frauds, we conclude the final judgment must be reversed.
At all times relevant to the instant case, Tydir owned General Mechanical Corporation, d/b/a GMC Construction, based in Daytona Beach, Florida, and Williams owned M & R Fabricators, located in Gainesville, Florida. GMC hired M & R Fabricators to perform work in two capacities: to manage GMC’s Gainesville-area projects and to perform work on some of those projects as a subcontractor. GMC paid M & R for the work performed as follows: a fixed amount was paid twice monthly for the management services rendered, while pay applications were submitted by M & R to GMC for the construction projects it worked on as GMC’s subcontractor. M & R performed this work for GMC for several years beginning in the late 1990’s. However, in March 2009, Ty-dir terminated this business arrangement and, shortly thereafter, Williams filed suit against Tydir and GMC alleging the breach of “a valid oral agreement/contract wherein [Williams] earned a percentage of the gross profit earned by [Tydir’s] Gainesville operations.” Although the complaint contained several counts, for our purposes in the present appeal we address only Williams’ first count in which he alleged Tydir and GMC breached their agreement “by failing to pay [Williams] those sums earned, or use said sums to create and capitalize a business entity wherein [Williams was to] own[] a 50% interest.” Tydir denied the existence of this alleged oral profit-sharing agreement to create a new business entity and also affirmatively defended on the basis that any such agreement violated the statute of frauds.
At trial, according to Williams’ testimony, in 2005 he and Tydir engaged in discussions which contemplated the two ultimately becoming equal partners in a new construction business to be operated out of Gainesville. To acquire the necessary start-up funds for the new company, Tydir, according to Williams, planned that a percentage of gross profits from any job run out of Williams’ Gainesville office would be set aside in an escrow account and would be matched by funds from Tydir. The amounts set aside would increase by ten percent increments over a period of at least five years until the two had enough money for the new company to be financially stable. Unfortunately, by the end of 2008, the relationship between Tydir and Williams began to cool, and in 2009, Tydir sent Williams the aforementioned letter terminating Williams’ services and accusing him of misconduct, misappropriation of funds, and pulling permits in GMC’s name.
At the conclusion of Williams’ case-in-chief, Tydir moved for a directed verdict on all counts, arguing the evidence showed the five-year oral contract was barred by the statute of frauds and that no exception to the statute existed. The trial court reserved ruling and took the matter under advisement. After Tydir presented his defense, during which he denied ever having had a profit-sharing plan or any conversations with Williams about creating a new company, he renewed his motion for directed verdict, but the trial court, yet again, reserved ruling thereon. Upon the conclusion of Williams’ rebuttal, Tydir once more moved for a directed verdict, and, for a third time, the trial court reserved ruling.
The cause was argued before the jury and, during its deliberations, the jury sub *1131 mitted the following question to the trial court: “1(b)?” This epigrammatic query concerned interrogatory 1(b) on the verdict form which read, “Is the agreement to be performed within one year from the making thereof?” Despite the jury’s evident confusion, the trial court declined to elaborate, instead informing the jurors they were to rely on the rules of law on which they had been instructed and to answer the questions on the verdict form based on that law. Without further incident, the jury returned a verdict against Tydir only on count I, the breach of contract count, finding in Tydir’s favor on Williams’ remaining counts. Specifically, as to count I, the jury found (1) there was an oral agreement between GMC, Tydir, and Williams, whereby Williams was to perform personal services for GMC; (2) Williams fully performed the oral agreement; (3) the agreement was to be performed within the space of one year from the making thereof; and (4) Tydir breached the agreement. The day after the trial concluded, the trial court officially denied Tydir’s motion for directed verdict. Tydir then moved for entry of judgment in accordance with his motion for directed verdict and, alternatively, for a new trial based on the jury’s confusion over the interrogatory “1(b).” The trial court denied the motions without a hearing. Final judgment was entered against Tydir in accordance with the jury’s verdict, and this appeal ensued.
Section 725.01, Florida Statutes, Florida’s “Statute of Frauds,” states in relevant part as follows:
No action shall be brought ... upon any agreement that is not to be performed within the space of 1 year from the making thereof, ... unless the agreement or promise upon which such action shall be brought, or some note or memorandum thereof shall be in writing and signed by the party to be charged therewith or by some other person by her or him thereunto lawfully authorized.
The history and rationale of the statute was reviewed in LynkUs Communications, Inc. v. WebMD Corp., 965 So.2d 1161 (Fla. 2d DCA 2007):
“The statute of frauds grew out of a purpose to intercept the frequency and success of actions based on nothing more than loose verbal statements or mere innuendos.” Yates v. Ball, 132 Fla. 132, 181 So. 341, 344 (Fla.1938). The statute is designed “to prevent persons from being enmeshed in and harassed by claimed oral promises made in the course of negotiations not ending in contracts reduced to writing.” Cohen v. Pullman Co., 243 F.2d 725, 729 (Fla. 5th Cir.1957). “The statute should be strictly construed to prevent the fraud it was designed to correct, and so long as it can be made to effectuate this purpose, courts should be reluctant to take cases from its protection.” Yates, 181 So. at 344.
Id. at 1165. In LynkUs, the Second District Court of Appeal concluded it was “ ‘clear from the object to be accomplished ... and the surrounding circumstances’ ” that the agreement between the parties at issue was intended to extend for longer than one year. Id. (quoting Yates, 181 So. at 344). Significantly, in so ruling, the district court stressed:
The fact that the business arrangement could commence within one year of the parties’ alleged agreement [was] of no moment. The evidence before the trial court shows beyond dispute that the joint business arrangement which was contemplated by LynkUs — but never memorialized in a writing — would be a long-term arrangement or an arrangement that, by its very nature, would extend for more than a year.
*1132 Id. See also First Realty Inv. Corp. v. Gallaher, 345 So.2d 1088, 1089 (Fla. 3d DCA 1977) (holding that the trial court erred in finding the strictly oral agreement was not barred by the statute of frauds where the clear intent of the parties showed that the profits from the newly formed company from which the plaintiffs interim bonus was to be taken were not expected for at least sixteen months after the agreement’s inception). As was pointedly noted in Yates, for the statute to make an agreement unenforceable, “it must be apparent that it was the understanding of the parties that [the agreement] was not to be performed within a year from the time it was made.” Yates, 181 So. at 344. Accord Gallaher, 345 So.2d at 1089 (“The primary factor to be utilized in determining whether or not an oral contract is to be performed within the one year limitation of the statute is, of course, the intent of the parties.”)
In the present case, Williams’ testimony confirmed the agreement to fund the new company was oral, but there was no evidence to show the parties ever contemplated the funding could be completed within the space of one year. To the contrary, Williams’ testimony was clear that he would forgo payment of his share of profits for five years, at the conclusion of which he and Tydir would have the money necessary to launch the anticipated partnership. Nor can the evidence be viewed to substantiate Williams’ alternative argument that Tydir’s complaint did not allege the breach of a single five-year contract, but of five separate oral agreements, each to be performed within a year.
In light of the foregoing analysis, we conclude that no view of the evidence legally supports the conclusion that the oral agreement entered into between Tydir and Williams was exempted from the statute of frauds. Accordingly, we reverse the final judgment entered in favor of Williams on his breach of contract claim and direct that judgment be entered in favor of Tydir.
REVERSED and REMANDED for further proceedings consistent with this opinion.
BENTON, C.J., and THOMAS, J., concur.